IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02440-KAS

D.C.,[1]

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#10], filed October 1, 2025, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for social security disability insurance pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* Plaintiff filed an Opening Brief [#17], Defendant filed a Response [#18], and Plaintiff filed a Reply [#19]. The case has been referred to the undersigned for all purposes on consent of the parties. *Signed Consent/Non-Consent Form* [#9]; *Order of Reference* [#21]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the briefs, the case file, and the applicable law. For

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

the reasons set forth below, the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

## I. Background

In the fall of 2015, Plaintiff filed an application for disability and disability insurance benefits under Title II. Tr. [#10-2] at 22.[2] Plaintiff alleged disability beginning January 22, 2015, a date on which Plaintiff was involved in a motor vehicle accident. *Id*. At the time of filing his claim for disability benefits, Plaintiff was a 44-year-old man who worked as a framer and general laborer. Tr. [#10-9] at 744-45; Tr. [#10-27] at 2414. He asserted that he suffered from injuries to both knees; left wrist; left arm and shoulder; upper back, neck, and lower back; headaches; anxiety; and other conditions. Tr. [#10-27] at 2377. His claim was initially denied on March 10, 2016. Tr. [#10-9] at 744-45. He requested a hearing before administrative law judge ("ALJ") Rebecca LaRiccia, who issued an unfavorable decision. Tr. [#10-2] at 22-34. The case's procedural history since ALJ LaRiccia's 2017 unfavorable decision has been long and winding.

Plaintiff appealed the unfavorable decision to this Court in Civil Case No. 17-cv-01897-KMT. Magistrate Judge Kathleen M. Tafoya remanded the case to the Commissioner because the ALJ discredited the medical evidence of Plaintiff's treating providers and Plaintiff's own testimony without explaining her reasoning. Tr. [#10-9] at 748-50.

ALJ LaRiccia held another hearing and issued a second unfavorable decision in October 2019. Tr. [#10-8] at 487-504. Plaintiff appealed the unfavorable decision to this

[2] The Court cites the Transcript of the Administrative Proceedings according to the Court Transcript Index's pagination. The Court cites briefs according to the numbering stamped at the top of each page by the Court's CM/ECF docketing system.

Court in Civil Case No. 20-cv-02558-MSK, arguing that ALJ LaRiccia engaged in no discussion of Plaintiff's knee pain, again denying Plaintiff's claim without appropriate explanation. *D.C. v. Comm'r*, No. 20-cv-2558-MSK, ECF No. 19 (D. Colo. Apr. 14, 2021). Defendant filed an unopposed motion to remand the case to the Commissioner for further administrative proceedings. Tr. [#10-15] at 1331-32. Then-Senior District Judge Marcia S. Krieger granted the motion and entered final judgment. *Id.* at 1334-35.

A new ALJ, Debra J. Denney, held another hearing and issued a third unfavorable decision in October 2022. Tr. [#10-14] at 1129-45. Plaintiff appealed the unfavorable decision to this Court in Civil Case No. 23-cv-00001-REB, arguing that ALJ Denney erred by failing to craft the claimant's residual functional capacity ("RFC") such that it accounted for all the limitations that she credited and offering no explanation for the omission of said limitations. *D.C. v. Comm'r*, No. 23-cv-00001-REB, ECF No. 14 (D. Colo. July 17, 2023). Defendant filed an unopposed motion to remand the case to the Commissioner for further administrative proceedings. Tr. [#10-21] at 2040-41. Senior District Judge Blackburn granted the motion and entered final judgment. *Id.* at 2038-39.

ALJ Denney held another hearing and issued a fourth unfavorable decision in April 2024. Tr. [#10-20] at 1948-65. Plaintiff appealed the unfavorable decision to this Court in Civil Case No. 24-cv-01696-REB, but Defendant filed an unopposed motion to remand the case before an Opening Brief was filed. *See* Tr. [#10-28] at 2458-59; *D.C. v. Comm'r*, No. 24-cv-01696-REB, ECF No. 11 (D. Colo. Aug. 16, 2024). An Order from the Appeals Council remanding the matter revealed the following deficiencies: (1) ALJ Denney failed to account for credited severe mental limitations in the RFC; (2) she relied on available jobs in the national economy that conflicted with Plaintiff's RFC; and (3) she evaluated

the medical opinion evidence using the framework for applications filed after March 27, 2017, although Plaintiff's application was filed in 2015. Tr. [#10-28] at 2467-68. Senior District Judge Robert E. Blackburn granted the motion and entered final judgment. Tr. [#10-28] at 2461-62.

ALJ LaRiccia held another hearing and issued a fifth unfavorable decision in June 2025. Tr. [#10-27] at 2369-91. This decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review).

## II. Social Security Framework

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

**A. The Five-Step Framework**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work

activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

In making his or her assessment, an ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010).

**B. The ALJ's Determination**

The ALJ addressed each of the five steps in this case. At step one, the ALJ determined that Plaintiff last met the Act's insured status requirements on December 31, 2017, and that he did not engage in substantial gainful activity from January 22, 2015, the alleged onset date, through December 31, 2017, his date last insured. Tr. [#10-27] at 2372.

At step two, the ALJ found that, through his date last insured, Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the spine; (2) degenerative joint disease of the left knee with medial meniscal tear and arthroscopic surgery; (3) left wrist cartilage and tendon injuries with repair surgery; (4) tendon injury of the left elbow with surgery; (5) left shoulder small labral tear and mild bursitis; (6) anxiety; (7) PTSD; and (8) headaches. *Id.*

At step three, the ALJ found that Plaintiff's impairments did not, either separately or in combination, meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.* at 2373. Specifically, Plaintiff's spine impairment did not meet listing 1.04 for disorders of the spine or 1.15 for disorders of the skeletal spine resulting in compromise of a nerve root. *Id.* at 2373-74. None of Plaintiff's other joint impairments met listing 1.02 for major dysfunction of a joint or 1.18 for abnormality of a major joint in any extremity. *Id.* at 2374. The ALJ concluded that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria of listing 12.06 for anxiety disorders or 12.15 for trauma and stressor related disorders (referring to § 12.00 of Appendix 1 to Subpart P of 20 C.F.R. § 404) because they did not result in extreme limitation of one, or a marked limitation of two, of the four areas of mental functioning. *Id.* at 2374-76. Instead, the ALJ found that Plaintiff had moderate impairments in the area of understanding, remembering, or applying information and in the area of concentrating, persisting, or maintaining pace. *Id.* at 2375. Plaintiff had no limitations in the area of interacting with others and in the area of adapting or managing oneself. *Id.* at 2375-76. The ALJ further concluded that Plaintiff's mental impairments did not satisfy the "paragraph C" criteria of listing 12.04 because the

record did not establish that Plaintiff had only a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life. *Id.* at 2376.

At step four, the ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b)[3] with the following limitations:

> [H]e must avoid climbing ladders, ropes, or scaffolds, kneeling, and crawling. He could frequently climb ramps and stairs, stoop, and crouch, but must avoid repetitive stooping and twisting. He must avoid walking on uneven surfaces. He could reach overhead occasionally, and could frequently handle, finger and feel on the right (dominant) side. He must avoid noisy industrial settings would have worked best in a "moderate" noise level or quieter, such as a grocery or department store. He must avoid the use of vibrating tools. He must avoid working in high exposed places. He must avoid commercial driving. He could understand, remember, and carry out simple instructions that could be learned in 30 days or less, and could sustain concentration, persistence, or pace to these simple instructions for two-hour intervals with normal breaks.

*Id.* at 2377. Based on the RFC and the testimony of an impartial vocational expert, the ALJ found that the demands of Plaintiff's past relevant work exceeded his RFC. *Id.* at 2389. Thus, Plaintiff was unable to perform past relevant work through his date last insured. *Id.*

At step five, the ALJ found—considering Plaintiff's age, education, work experience, and RFC—that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. *Id.* at 2389-91. The vocational expert identified several examples of such work that the ALJ credited,

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

including merchandise marker, cashier II, and housekeeper cleaner. *Id.* at 2390. Therefore, Plaintiff was not disabled as defined by the Act during the relevant period from January 22, 2015, through December 31, 2017. *Id.* at 2391.

## III. Standard of Review

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson*, 602 F.3d at 1140. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings,

the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (internal quotation marks and modification omitted).

## IV. Analysis

Plaintiff argues that the ALJ failed to adequately assess the medical opinions of Dr. Andrew Clithero, Dr. Kerry Kamer, and Dr. Mark R. Stevens. *Opening Br.* [#17] at 5-22. Plaintiff also argues that the ALJ failed to evaluate Plaintiff's headaches under SSR 19-4P at Step 3 and failed to account for all symptoms and limitations resulting from headaches in the RFC. *Id.* at 22-26. Plaintiff further argues that, given the Commissioner's failure to "issue a decision that is error-free" for nearly 10 years, the correct remedy is an award of disability benefits rather than a fifth remand. *Id.* at 26-30. Finding the headache issue dispositive, the Court will not consider the opinion evidence issues.

### A. Whether the ALJ Reversibly Erred

At step two, the ALJ found that Plaintiff's headaches were a severe medically determinable impairment.[4] Tr. [#10-27] at 2372. Plaintiff asserts that the ALJ failed, however, to make any meaningful findings concerning Plaintiff's headaches at step three or step four. *Opening Br.* [#17] at 23.

Beginning with step three, Plaintiff argues that the ALJ did not determine "whether Plaintiff's headaches medically equaled Listing 11.02 in accordance with SSR 19-4p." *Id.* Social Security Ruling 19-4p, 2019 WL 4169635 (S.S.A. Aug. 26, 2019), "provides

[4] Neither the ALJ nor either party on appeal addresses whether Plaintiff's diagnosed chronic migraines fit within the Commissioner's definition of a "primary headache disorder." *See* SSR 19-4p, 2019 WL 4169635 (S.S.A. Aug. 26, 2019) ("We will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as MDIs because secondary headaches are symptoms of another underlying medical condition.").

specific guidance on how to determine medical equivalency in cases involving headache disorders[,] and in fact requires that they be evaluated under Listing 11.02," the listing for epilepsy, which is "the most closely analogous listing." *Lindsay M. v. Kijakazi*, No. 2:21-CV-02063-EFM, 2022 WL 612452, at *7 (D. Kan. Mar. 2, 2022). "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing." SSR 19-4p, 2019 WL 4169635, at *7. Paragraph B of Listing 11.02 requires migraines "occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id.* Paragraph D of Listing 11.02 requires migraines "occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." *Id.*

To evaluate whether a headache disorder medically equals listing 11.02, ALJs should consider:

> A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id*.

In the case of Paragraph D, ALJs should further consider

> whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others;

> concentrating, persisting, or maintaining pace; or adapting or managing oneself.

*Id.*

Plaintiff points out that the ALJ in this case summarily concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled" a Listing, and addressed the rest of the severe impairments in turn, without reference to Plaintiff's headaches. *Opening Br.* [#17] at 23-25; Tr. [#10-27] at 2373. Plaintiff argues that, pursuant to *Lindsay M.*, this was reversible error. *Opening Br.* [#17] at 23-24.

Defendant responds that Plaintiff failed to meet his step-three burden of demonstrating that his headaches met or medically equaled a Listing pursuant to Social Security Ruling 17-2p, 2017 WL 3928306 (S.S.A. Mar. 27, 2017). *Response Br.* [#18] at 20-24. SSR 17-2p generally requires that an ALJ's finding of medical equivalence *must* be supported by a prior administrative medical finding of equivalence, medical expert evidence supporting equivalence, or a report from the Appeals Council's medical support staff supporting equivalence. SSR 17-2p, 2017 WL 3928306, at *3. In essence, Defendant argues that because no evidence in the record satisfies any of the above criteria, the ALJ's failure to discuss Plaintiff's headaches was not an error at all, or in the alternative, harmless error. *Response Br.* [#18] at 20-24.

This issue requires the Court to reconcile *Lindsay M.* and SSR 17-2p, and to pinpoint whether the relevant inquiry on appeal is limited to what the ALJ *found*, or whether the relevant inquiry is what the record, at large, does or does not *contain*. The Court has exhaustively reviewed other persuasive authority in this Circuit and concludes that courts address the issue differently. The Tenth Circuit has yet to address a legal challenge of this nature. However, Magistrate Judge Timothy P. O'Hara deftly

synthesized these authorities in *M.L.T. v. Bisignano*, No. 24-cv-02512-TPO, 2025 WL 3198442, at *4 (D. Colo. Sept. 30, 2025), and the Court incorporates his framing of the relevant legal standards here.

> In *Lindsay M.*, Chief United States District Judge Eric F. Melgren in the District of Kansas noted that when an ALJ "finds that the claimant does not meet or equal a listing at step three, he must discuss the evidence supporting his decision, the uncontroverted evidence he chose not to rely upon, and any significantly probative evidence he rejected." *Id.* at *8 (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). However, Judge Melgren also noted that the Tenth Circuit excuses an ALJ's failure to include specific findings where the ALJ "provides detailed findings at other steps in the analysis that support the step 3 decision in a readily reviewable manner." *Id.* (citing *K.I. v. Kijakazi*, No. 20-1110-DDC, 2021 WL 4149087, at *7 (D. Kan. Sept. 13, 2021)[.] . . . . The ALJ only "briefly" discussed headaches as part of the RFC, and that discussion failed to allow the Court to "conduct meaningful judicial review in [that] case." *Id*. at pp. *8-10. An adequate Step Three finding of non-equivalency is one that is "supported by substantial evidence and . . . articulated elsewhere in the decision in a manner that permits a court to understand and review" the finding. *Id*. at *8, n. 75 (internal citation omitted).
>
> *Lindsay M.* must be read together with *Fischer-Ross, K.I.,* and SSR 17-2p, 2017 WL 3928306 (S.S.A. Mar. 27, 2017). First, in *Fischer-Ross*, the Tenth Circuit rejected the claimant's argument for "a per se rule" for "purely formalistic remands" to remedy an inadequate Step Three finding. 431 F.3d 729, 733 (10th Cir. 2005). *Fischer-Ross* leaves open the possibility that the ALJ's other findings might "provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment" and thereby avoid "unjustifiably prolonging administrative proceedings" through remand. *Id*. After considering the matter through the harmless error lens, the *Fischer-Ross* court found the ALJ's RFC analysis to negate the possibility that the claimant had a medical condition of Listing-level severity. The court therefore affirmed the ALJ's conclusion that the claimant was not disabled despite the omitted Step Three finding. *Id*. at 735.
>
> Then, in SSR 17-2p, the Administration set a low bar regarding the "Articulation requirement." 2017 WL 3928306 at *4. "Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* And an ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step . . . will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id*.

> Finally, in *K.I.*, consistent with SSR 17-2p, the ALJ similarly failed to cite sufficient evidence at Step Three, but the error was deemed harmless "because he cited the record within the RFC analysis." 2021 WL 4149087 at *7.

*M.L.T.*, 2025 WL 3198442, at *4.

Based on the foregoing, the Court concludes that an ALJ errs by failing to consider whether a plaintiff's primary headache disorder medically equals Listing 11.02 at step three. *Lindsay M.*, 2022 WL 612452, at *8. Accordingly, by failing to consider Plaintiff's headaches at step three, the ALJ erred here. *Clifton*, 79 F.3d at 1009; *see also R.A. v. Bisignano*, No. 24-cv-01566-CYC, 2026 WL 693124, at *2 (D. Colo. Mar. 12, 2026) ("[A]n ALJ's explanation of his decision must be sufficient to allow for meaningful judicial review.").

Thus, the question becomes whether such error is reversible. On this point, the Tenth Circuit instructs that "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross*, 431 F.3d at 733. Indeed, "[n]either *Clifton's* letter nor spirit require a remand for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Id.* at 734.

Here, the ALJ made the following findings about Plaintiff's headaches:

- "On his Function Report the claimant stated that pain and light sensitivity limited his ability to focus on tasks, and he reported trouble concentrating and completing tasks (Exhibit 5E)." Tr. [#10-27] at 2375.
- "The claimant alleged disability due to a motor vehicle accident which injured both knees, left wrist, left arm and shoulder, upper back, neck, and lower back;

headaches with sensitivity to light and hearing; tendonitis; sleep apnea; anxiety; peripheral vision; trouble breathing out of his left nostril; and nerve damage of the feet and hands (Exhibit 9E).” *Id.* at 2377.

- “The undersigned also considered the claimant’s testimony at previous hearings held on February 27, 2017; September 12, 2019; and September 13, 2022. During these hearings the claimant described pain and discomfort in his left knee, back, neck, left arm and shoulder, and headaches that limited his ability to lift, walk, stand, and perform daily activities.” *Id.* at 2378.
- “After careful consideration of the evidence, the undersigned finds that the claimant’s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant’s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.” *Id.*
- “On January 22, 2015, the claimant was involved in motor vehicle accident. He visited the emergency room reporting that he hit his head against the windshield, with headache, neck pain, right thigh pain, and left knee pain. However, CT scan of the head, neck, chest, abdomen, and pelvis showed no acute injury.” *Id.*
- “Dr. Da Silva prescribed Gabapentin, Baclofen, and Flexeril (Exhibit 6F). Dr. Da Silva also diagnosed chronic migraine, cervicogenic headaches, and chronic posttraumatic headaches (Exhibit 6F, page 13).” *Id.* at 2379.

- "The claimant's headaches, considered in conjunction with his non-severe impairments such as hearing loss, precluded working in noisy industrial settings and limited him to working in settings with a 'moderate' or quieter noise level, such as a grocery or department store. Additionally, the claimant's headaches, chronic pain, and non-severe impairments precluded working in high exposed places or commercial driving, as these settings could aggravate his chronic pain and subjective visual disturbances. However, as discussed above, the claimant's neurological examination findings were unremarkable, and he showed good uncorrected vision that would not have otherwise limited his ability to work." *Id.* at 2382.
- "The claimant performed a wide range of activities that were not consistent with a finding that he was disabled prior to the date last insured." *Id.* at 2383.
- "In July 2017 the claimant visited Dr. Andrew Clithero to obtain disability paperwork. The progress note for this visit stated that the claimant was unable to sit upright for long periods of time, unable to walk more than one block without debilitating pain, and he has had recurrent headaches and cognitive issues as well (Exhibit 21F, pages 3 and 4). The undersigned gives this statement no weight. This statement appears to be a reiteration of the claimant's statements about his limitations, rather than a medical opinion." *Id.* at 2385.
- "The undersigned gives weight to Dr. Stevens' opinion that the claimant cannot work around unprotected heights or machinery. This part of his opinion is consistent with the weight of the evidence and the limitations caused by the

claimant's orthopedic injuries, headaches, and the effects of non-severe impairments." *Id.* at 2389.

The Court concludes that there is not enough here to meaningfully review the ALJ's implicit conclusion that Plaintiff's headaches did not medically equal listing 11.02 pursuant to SSR 19-4p. The ALJ did not discuss Dr. Da Silva's diagnoses of chronic migraine, cervicogenic headache, and chronic posttramatic headaches, nor indicate the weight that she afforded to those diagnoses. *See* Tr. [#10-7] at 364. Dr. Da Silva's diagnoses were informed by Plaintiff's report that "[h]ead pain is in his temples, across the forehead, back of the head and behind the eyes. Pain is continuous. He has sensitivity to light and nausea." *Id.* at 363. Plaintiff further reported that "[t]here is not a pattern for when headaches would be worse throughout the day," and that his headaches were triggered by "physical activity." *Id.* at 361.

Plaintiff reported headaches in his Function Report and a separate Headache Questionnaire. Tr. [#10-6] at 169. According to that questionnaire, Plaintiff states that he has headaches "24/7," that his headaches last "all day and night," and that exposure to "light and noise" exacerbate his headaches. *Id.* The ALJ engaged in no substantive analysis reconciling Plaintiff's subjective reports with the objective medical evidence concerning his headaches. Additionally, the ALJ's consistent grouping of Plaintiff's headaches with other severe and non-severe medical impairments impedes the Court's ability to pinpoint *how* Plaintiff's headaches informed or did not inform the ALJ's step three and step four analyses. For these reasons, the Court concludes that the ALJ erred and that the error was not harmless because no other findings at any other step in the

sequential process provide a proper basis for upholding the ALJ's step three conclusion. *See Fischer-Ross*, 431 F.3d at 733.

The Court is aware of the relatively high threshold that SSR 17-2p imposes in order for a plaintiff to medically equal a Listing. However, based on the paucity of findings concerning the evidence of Plaintiff's headaches, Defendant's request that this Court review the record to determine whether SSR 17-2p's requirements have been met amounts to a request that the Court engage in de novo review. This the Court may not do. *Sisco*, 10 F.3d at 741; *T.A.B. v. Bisignano*, No. 24-cv-00246-TPO, 2025 WL 3198412, at *9 (D. Colo. Nov. 12, 2025) ("This Court is unable to evaluate *de novo* whether Plaintiff's migraine condition in fact qualifies as disabl[ing] at Step Three as that is an inherently fact-based matter for the ALJ to decide as the fact-finder."). While the Court might be persuaded by Defendant's position on a more settled record, here it is a bridge too far. *Cf. M.L.T.*, 2025 WL 3198442, at *9 (reaching the opposite conclusion where the ALJ made adequate findings at step four); *Erika W. v. O'Malley*, No. 22-cv-02379-TC, 2024 WL 814574, at *5 (D. Kan. Feb. 27, 2024) (same).

**B. Remedy**

Because the Court agrees with Plaintiff on the headache issue, it must consider the proper remedy. Plaintiff asserts that, given this case's tortured procedural history, an immediate award of benefits is appropriate. *Opening Br.* [#17] at 26. Defendant responds that, even where a case has been subject to multiple remands, an award of benefits is not appropriate where the record does not support that Plaintiff is disabled as a matter of law. *Response Br.* [#18] at 25.

Courts exercising their discretion to award benefits consider "the length of time the matter has been pending" and "whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'" *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (quoting *Harris v. Sec'y of Health & Hum. Servs.,* 821 F.2d 541, 545 (10th Cir. 1987)). "'Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose,'" and where "the record fully supports a determination that [the plaintiff] is disabled as a matter of law." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quoting *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988).

True, the Tenth Circuit has warned that the Commissioner is "not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco*, 10 F.3d at 746 (internal quotation marks and citation omitted). But it made that statement where the record revealed that the ALJ "resented Plaintiff's persistence, refused to take her disease seriously, and at times treated her claim with indifference or disrespect." *Id.* The Court perceives no such dynamic at play here.

To be sure, the Court is not amused by the "heads we win; tails, let's play again" dynamic that seems to be afoot in this case. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, the Court cannot conclude that the record fully supports a determination that Plaintiff is disabled and that remanding this matter would serve no useful purpose. *See Winick v. Colvin*, 674 F. App'x 816, 823 (10th Cir. 2017) ("We recognize that this matter has been pending nearly ten years and has required numerous remands for further agency decision-making. But an eventual award of benefits is not

foreordained on this record, and further administrative proceedings are appropriate to permit the Commissioner to properly weigh the evidence."). The Commissioner is advised that the next judicial officer to review this case may not be so forgiving.

## V. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Plaintiff and **close** this case.

Dated: September 28, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge